UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY JONES,                                          CASE NO. 8:17-cv-02888-SDM-AEP

      Plaintiff,

vs.

THE STATE OF FLORIDA,
PINELLAS COUNTY SHERIFF
ROBERT GUALTIERI,
and PINELLAS COUNTY,

      Defendants.

_____/

## SECOND AMENDED COMPLAINT

Respectfully submitted, Craig Lynd, Esq., Kaufman and Lynd, PLLC, Two

Hundred East Robinson Street, Suite 250, Orlando, Florida 32801, 407-706-3535,

407-440-4543 (facsimile), Florida Bar No. 122210, craiglynd@kaufmanlynd.com.

Plaintiff, TERRY JONES, in accordance with F.R.C.P. 15(a), amends this

Complaint in response to Defendants, COUNTY and SHERIFF'S, individually filed

second Motions to dismiss, hereby suing jointly and severally Defendants,

PINELLAS COUNTY ("COUNTY"), PINELLAS COUNTY SHERIFF ROBERT

GUALTIERI ("SHERIFF"), and THE STATE OF FLORIDA ("STATE").

## JURISDICTION

1. This is an action for damages arising out of one or more violations of State and Federal law, detailed below.

2. This action is brought pursuant to 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution, and the laws of the State of Florida.

3. The jurisdiction of this Court is predicated on 28 U.S.C. §§1331, §1343, and 42 U.S.C. §§1983, 1988 and constitutional provisions mentioned above, and under Florida tort law.

4. As alleged herein the federal violations were committed because of the deliberate indifference and/or malice of all of the Defendants.

5. The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court in and for the Middle District of Florida. In connection with the acts, practices, and violations alleged herein, each Defendant, directly or indirectly, violated the constitutional and legal rights of the Plaintiff, TERRY JONES ("JONES").

6. All conditions precedent to the maintenance of this action have been satisfied.

7. State law claims' conditions precedent, under Fla. Stat. §768, have been satisfied and are attached as Exhibit "A" to this Complaint.

## PARTIES

8. Plaintiff JONES (hereinafter "JONES"), at all times material hereto, was a resident of Pinellas County.

9. Defendant, STATE, is ultimately responsible for the oversight of jails and prisons within the Florida Department of Corrections System.

10. Defendant COUNTY is the legislative and governing body of Pinellas County. Defendant COUNTY had the powers and duties to, among other things, carry on county government, make investigations of county affairs and perform acts which are in the common interest of the people of Pinellas County.

11. Pursuant to Florida law, at all times material hereto, Defendant SHERIFF was charged with the duty of maintaining, staffing, and supervising all correctional activities in Pinellas County and had ultimate authority over correctional activities. Said Defendant is responsible for the conduct of the corrections officers in the employ of the Department of Corrections and ensuring that the Department's corrections officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

12. Pursuant to Florida law, Defendant COUNTY was at all times material hereto charged with the duty of maintaining, staffing, and supervising all correctional activities in Pinellas County and, in doing so, at the time of the incidents complained of here, appointed Brian Riedl as its Director of the Department of Corrections, and delegated those duties to him.

13. Defendant COUNTY was and is a Florida municipal corporation which had ultimate authority over the Corrections Health Services, at Pinellas County Jail, which provides health services to all inmates incarcerated in the Pinellas County Jail System, pursuant to Pinellas County Code of Ordinances.

## HISTORICAL BACKGROUND

### A. Factual Allegations Regarding Incidents at the Pinellas County Jail, Which Did, or Should Have Placed Defendants on Notice of Ongoing Constitutional Deprivations Within the Pinellas County Jail System

14. Prior to the injury of Plaintiff, JONES, there had been multiple previous incidents, at Pinellas County Jail, where specialized medical needs of inmates and detainees were known, and those needs were not satisfied appropriately or disregarded entirely. A few of those case, brought in Federal Court, are listed below:

### i. Diane Nelson

15. Diane Nelson was incarcerated from March 6, 1994 to the date of her death, March 9, 1994. Ms. Nelson entered the Pinellas County Jail, as a pre-trial detainee, after having been arrested that evening. Ms. Nelson suffered a prior heart attack and was prescribed Procardia XL and Nitroglycerine to address her cardiac issues. Upon intake, Ms. Nelson informed the receiving nurse of her medication requirements and that she had yet to take her evening dose. This was

recorded in Ms. Nelson's file along with an elevated blood pressure, and a note to verify the medication.

16. The following day, March 7, 1994, Ms. Nelson was given Nitroglycerine, but not her Procardia prescription. Over the duration of her incarceration, Ms. Nelson requested her medication and complained of chest pain more than seven (7) times. Ms. Nelson's cellmates and even guards notified the medical staff.

17. The medical staff continuously knowingly failed to verify Ms. Nelson's medications. They continuously failed to run any tests related to chest pain, including an EKG. Ms. Nelson was repeatedly rebuked for falsifying symptoms and told to "self-medicate" and "quit faking" her chest pain.

18. Diane Nelson died on March 9, 1994, never having received her proper medications or any real form of medical attention. Even in the midst of her myocardial infarction, Ms. Nelson's blood pressure was never taken, outside of her initial intake. After her death, in the subsequent lawsuit, a nurse was quoted as saying "[w]e save money because we skip the ambulance and bring them right to the morgue."

### ii. Fernando Cantres, Jr.

19. Fernando Cantres, Jr. was arrested and placed in the custody of Pinellas County Jail on April 1, 2009. Upon arrival at the detention center, Mr. Cantres informed

the receiving nurse of his HIV positive status and that he was having HIV related complications.

20. Mr. Cantres filed seven (7) requests, over the next five (5) months, citing weight loss, eyesight loss, hearing voices, and other progressively worsening symptoms. Mr. Cantres stated, in one such from, that the medical staff had failed to verify his HIV status and were not monitoring him or referring him to chronic care. It wasn't until August 2009, when he was given a medical release form.

21. By the time Mr. Cantres was seen by any medical personnel he significantly reduced vision, lost the ability to control his bladder, and was having trouble walking and keeping his balance.

### iii. George Arthur Hunt, IV

22. George Hunt was arrested on May 18, 2013 and taken to Pinellas County Jail. Mr. Hunt advised the receiving nurse, on arrival that he was extremely jaundiced and under the care of a physician.

23. Despite his visibly yellow color and the nurse's knowledge of his serious medical condition, Mr. Hunt was cleared for admission to the jail. Subsequently, Mr. Hunt became so unsteady that he was given a wheelchair.

24. Two and a half hours later the staff nurse contacted an off-site doctor, contracted through a subcontractor. This doctor was not actually a licensed physician and was not qualified to practice medicine without the supervision of a licensed

practitioner. Despite this oversight in licensing, the Doctor gave the on-duty nurse a list of medications to give him with orders to follow up with him in an hour.

25. The nurse failed to follow orders, and two hours later, it was noted by the guards that Mr. Hunt was nonresponsive. After waiting for backup, the guards established that Mr. Hunt was not breathing. No attempts at resuscitation were made and paramedics weren't called for another twenty minutes. When the paramedics were allowed access to Mr. Hunt, 40 minutes later, there was nothing that could be done. Mr. Hunt was pronounced dead less than six (6) hours, after arriving at the Pinellas County Jail.

### *iv. John W. Patterson*

26. John W. Patterson was incarcerated from September 28, 1999 to the day of his death on October 1, 1999. Mr. Patterson turned himself in to Pinellas County Jail, after learning that he had an outstanding warrant. Upon his arrival, Mr. Patterson supplied the booking officers with the various medications that he was prescribed for depression and bipolar disorder with psychotic features. Mr. Patterson additionally disclosed a prior suicide attempt and it was noted that he was anxious, manic, fearful, and confused, upon intake.

27. Mr. Patterson expressed suicidal thoughts which were minimized by the guard on duty. A prisoner in an adjoining cell informed the guard on duty that Mr.

Patterdon had a shoelace and was trying to hang himself. The guard told the informing prisoner not to worry about it. This was the guard's third encounter with Mr. Patterson's possession of what was considered contraband in the psychological evaluation unit, which Mr. Patterson was being held in.

28. The morning after the guard's encounters with Mr. Patterson, October 1, 1999, Mr. Patterson was found dead, having successfully hung himself with the shoelace.

## GENERAL ALLEGATIONS

29. The Pinellas County Jail System has one facility, which houses pre-trial detainees, inmates serving sentences of less than one year, or convicted prisoners with pending post-conviction hearings. This facility, which is the subject location of this litigation, is located at 14400 49th Street North, Clearwater, FL 33762.

30. At all times material to this Action, this facility was inadequately staffed with medical professionals, including doctors and nurses.

31. At all times material to this Action, both medical and nonmedical staff were improperly trained to manage the requisite needs of those, in their care, with specialized medical conditions.

32. Doctor Mauricio Rangel, at all times material hereto, was an agent and under the employ of Defendant, COUNTY.

33. An unknown correctional officer, involved in the incident detailed herein, was an agent and under the employ of Defendant, SHERIFF.

34. At all times material hereto, and in all acts described herein, the Defendants were acting under color of state law and color of their authority as public officials and public employees of the State of Florida and granted by the State of Florida.

35. Defendants violated Plaintiff JONES' constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs of Defendants.

36. Defendants violated the State and Federal laws, outlined herein, in their treatment or lack of treatment, regarding Plaintiff, JONES' specialized medical condition.

37. The wrongful actions of the Defendants constitute negligence under the laws of the State of Florida.

38. The Plaintiff seeks an award of damages for permanent physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, court costs and attorneys' fees.

### A. Factual Allegations Regarding Plaintiff Terry Jones

39. Terry Jones was incarcerated in the Pinellas County Jail from April 6, 2016 until his release on April 21, 2016.

40. Mr. Jones suffers from a number of health issues including: diabetes, gastric bypass surgery, and a history of stroke. Consequently, Mr. Jones was on a number of medications at the time of his arrest.

41. Mr. Jones reported his necessary and prescribed medications and abdominal discomfort on April 7, 2016. His medications began administration on April 8, 2016.

42. Mr. Jones went more than 24 hours without the ability to urinate, when he was seen on April 9, 2016. It was noted that Mr. Jones' lower abdomen was distended and painful. A Foley Catheter was ordered, over the phone, without being seen by a licensed doctor, and Mr. Jones, after relieving his bladder began to feel better. Mr. Jones was only seen by the nurse on duty. The doctor's orders were given over the phone.

43. On April 10, 2016 Mr. Jones again presented to the medical staff, complaining of increased pelvic pain and urine discoloration. At this point the catheter was still in place and a urine culture was ordered. Mr. Jones continued to complain of pressure from the catheter, later in the day. Mr. Jones was not instructed on how to clean, change, and empty the catheter until more than twenty-four (24) hours after it was inserted.

44. The catheter was removed on April 12, 2016, per doctor orders.

45. On April 15, 2016, Mr. Jones began complaining of a burning sensation while urinating.

46. On April 18, 2016, Mr. Jones began reporting his inability to release his bladder, to the guard on duty, whose identity is unknown at this time, and requesting medical attention. The guard told him he had to wait to see any medical personnel until the next morning. This guard was informed five (5) times of Mr. Jones' health concerns, each time referring to Mr. Jones as "cry baby" and "boy", telling him to "quit whining" and so on. This guard also refused to give Mr. Jones a mattress, which necessitated Mr. Jones lying on a stone floor when he lost the ability to stand, from the pain.

47. A nurse came to dispense medications to a different inmate and Mr. Jones approached her, explaining that he hadn't been able to urinate in over twelve (12) hours. The nurse told Mr. Jones to drink more fluids, despite noting distension in his lower abdomen.

48. Mr. Jones was experiencing so much pain, at this point that, he lost consciousness, causing him to collapse. In his fall, Mr. Jones injured his head, neck, back and knee. This fall was witnessed by his cellmates, who called out for help, but Mr. Jones was never assisted, and the fall was never reported, by the guards.

49. Plaintiff, JONES' fall was notated later, in his medical records, by the on duty nurse.

50. Mr. Jones was able to relieve his bladder a small amount, in the early morning, on April 19, 2016. He reported to the medical staff that the urine was dark and discolored. A catheter was once again inserted that afternoon, almost 24 hours after his initial pleas for emergency medical attention. The catheter caused significant pain and affected Mr. Jones' ability to walk, along with the back pain from his earlier fall, which necessitated the use of a wheelchair.

51. The following morning, April 20, 2016, Mr. Jones was removed from the wheelchair and given a cane to assist with mobility. Mr. Jones continued to complain of increased pain and decreased mobility.

52. X-Rays were ordered on April 20, 2016. Mr. Jones also received an injection into his spine, for his lower back pain, without any diagnosis.

53. Also, on April 20, 2016, Dr. Mauricio Rangel, MD notated Mr. Jones' medical file stating that he was "feigning illness" and refused to let Mr. Jones see or speak with the medical director. Dr. Rangel also made disparaging comments to Mr. Jones, stating that he just wanted to get out of general population and that he must like it in the medical facility.

54. No tests were administered by the medical staff of Pinellas County Jail, despite the fact the medical standard regarding discolored urine and related issues, is to

test for renal failure. Mr. Jones' fall was never reported by the guards but was documented by the nurses on duty. All Defendants, in this present case, were and are guilty of deliberate indifference regarding the medical care and treatment of Mr. Jones and other inmates of the Pinellas County Jail.

55. Mr. Jones was released from incarceration on April 21, 2016. Upon release, the medical personnel failed to remove his catheter and he had to report immediately to an emergency room, to have it removed. It was revealed, by the hospital, that Mr. Jones had an infection from the catheter and that his kidney function was down to twenty-six (26) percent.

56. Mr. Jones subsequently had to stay in the hospital for an additional two (2) days before he could be released, due to the damage to his kidney.

57. Mr. Jones filed grievances with the Defendants COUNTY, SHERIFF, and STATE and has either received no response or a denial of liability from each.

## COUNT I

### *42b U.S.C. § 1983 CLAIM AGAINST DEFENDANT, PINELLAS COUNTY, for Violations of the Eighth and Fourteenth Amendments Failure to Provide Medical Care to Detainees with Known, Serious Medical Conditions*

Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57), as if stated fully herein and further alleges:

58. Defendant, COUNTY, was on notice that the Pinellas County Jail Facility was overcrowded and failed to properly treat the special needs of certain inmates,

such as inmates with medical conditions, as evidenced by numerous previous incidents, a portion of which are documented herein.

59. At all times material to this action, Defendant, COUNTY, was on notice that the facility guards and medical staff were inadequately trained to handle the specialized medical conditions of all inmates, especially those requiring exceptional medical care, including Plaintiff, JONES.

60. Defendant, COUNTY, has not made, continues not to make, and does not require daily inquiries by medical staff or persons with particularized medical training, into those inmates and/or detainees with specialized or emergency medical conditions.

61. Defendant, COUNTY, is and has been on notice that medical staff does not make daily inquiries with each individual inmate or detainee and that there is no policy in place requiring staff to make such individual daily examinations. Accordingly, it is incumbent on a correctional officer, with no particularized training, to alert proper medical staff when a medical issue is brought to his or her attention.

62. Defendant, COUNTY'S policy of "allowing" inmates to inquire about or request medical treatment, does not allow for ready access to medical care or immediate medical attention, and does not satisfy Defendant's legal duties or requirements, under the law.

63. The staff is not trained to understand the significance or the difference in the types of complaints that require immediate medical attention or that can follow the protocol of a specialized or emergency medical condition. Thereby leaving it in the untrained hands of a correctional officer to determine if immediate medical attention is warranted, at his or her unqualified discretion.

64. Defendant, COUNTY, is legally required, under U.S.C. §1983 to provide heightened medical care to those with specialized medical conditions.

65. While Defendant, COUNTY, may possess the necessary medical staff and equipment to address these specialized needs, they have no way to determine the appropriate time to administer to those specialized medical services and solely rely on individual complaints and a trust that those complaints are being correctly assessed and relayed by unqualified, nonmedical professionals.

66. Defendant, COUNTY'S policies rely on faulty reporting methods, dependent on the sole discretion of untrained, nonmedical personnel.

67. Defendant, COUNTY'S continued policy of denying medical attention based on arbitrary system of requesting medical treatment within a certain time limit to see a doctor or other medical professional that is then available the next day or some other point in the future, does not adequately or reasonably give access to necessary medical care for individuals with specialized r emergency medical conditions, suffered by persons like plaintiff.

68. At all times material to this action, Defendant, COUNTY, was on notice that the facility guards and medical staff continuously failed to treat inmates or detainees humanely.

69. Defendant, COUNTY, knew or should have known of reports demonstrating the frequent failures of both the medical staff and corrections officers to appropriately address medical concerns of inmates and/or detainees with medical conditions.

70. Defendant, COUNTY, had a duty to ensure that their employees, agents, and other responsible parties fulfilled their duties and did not violate the constitutional rights of persons such as Plaintiff, TERRY JONES.

71. Any abdication of policymaking and oversight responsibilities, by Defendant, COUNTY, to other parties, contributed to the injuries of Plaintiff, JONES, by allowing such an environment to occur.

72. Defendant, COUNTY, had a duty to train, supervise, control, monitor or otherwise ensure that the doctors, nurses, and jail security staff, under the Defendants' control, were able to adequately provide humane living conditions and medical treatment, and did not violate the constitutional rights of persons such as the Plaintiff, TERRY JONES.

73. Defendant, COUNTY, was on notice of the unconstitutional conditions in the Pinellas County jail facilities, and regularly failed to rectify these conditions.

74. The above acts and omissions of all Defendant, COUNTY, constitutes a course of conduct and/or failure to act amounting to negligence and/or deliberate indifference to the rights, health, safety, and welfare of the plaintiff, TERRY JONES, and those similarly situated, resulting in the deprivation of his constitutional rights under state and federal law.

75. Federal and state law, as well as accepted corrections practices, at the time of the incident, provided "fair warning" to Defendant, COUNTY, that their conduct was improper, incompetent, illegal, and in violation of the Plaintiff's constitutional and state rights.

76. The acts and omissions of the Defendant, COUNTY, as set forth above, violated clearly established and well settled federal constitutional rights of the Plaintiff, TERRY JONES, i.e., cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Unites States Constitution.

77. At all times material hereto, Defendant, COUNTY, was responsible for adopting, implementing, and maintaining the rules and regulations in regard to their obligation to provide constitutionally acceptable levels of housing, living conditions, and health and assessment services for detainees and inmates within the Pinellas County jail system.

78. Defendant, COUNTY, failed to comply with these obligations, as its employees breached their duties and failed to properly screen, assess, and treat Plaintiff or

allow him humane living conditions, causing substantial risk and harm to Plaintiff, JONES, and those similarly situated.

79. Defendant, COUNTY, through correctional officers, doctors, nurses, and medical staff, demonstrated deliberate indifference to the health and wellbeing of inmates such as Plaintiff JONES, by failing to institute a constitutionally adequate system for treating the medical problems of pre-trial detainees, which resulted in the systematic denial of medical care to inmates with serious, known medical problems.

80. Defendant, COUNTY demonstrated deliberate indifference to the health and wellbeing of inmates such as the Plaintiff JONES, by failing to ensure that inmates received appropriate and necessary medical care, in a consistent manner.

81. Because of the inadequate policies put in place, Plaintiff JONES suffered severely from an entirely preventable infection and loss of kidney function, as well as head, neck, back, and knee injuries, which have required extensive medical care and hospitalization.

82. Plaintiff JONES' inability to receive the proper medical care was a direct and proximate result of Defendant, COUNTY'S failure to maintain the necessary, staffing, training, protocols, and so on, required of them by the Federal and State law, Department of Corrections regulations, community guidelines, and common practices and requirements in the field.

83. Defendant, COUNTY, acted in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power possessed by virtue of state law and made possible only because Defendant, COUNTY, was clothed with the authority of state law.

84. Plaintiff JONES was a victim of the above-mentioned illegal treatment of inmates and detainees, and said illegal treatment was the direct result of the previously described acts, omissions, policies, and/or customs of Defendant, COUNTY.

85. The deliberate indifference of Defendant, COUNTY, violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C §1983 provides a remedy.

86. As a direct and proximate result of Defendant, COUNTY'S conduct, Plaintiff JONES suffered severe physical, mental, and emotional injuries, loss of earning capacity, and loss of enjoyment of life.

WHEREFORE Plaintiff TERRY JONES demands compensatory damages against Defendant, COUNTY, plus attorney's fees, costs and trial by jury for all issues so triable by right.

## COUNT II

*42b U.S.C. § 1983 CLAIM AGAINST DEFENDANTS, PINELLAS COUNTY SHERIFF, for Violations of the Eighth and Fourteenth Amendments Failure to Provide Medical Care to Detainees with Known, Serious Medical Conditions*

Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57), as if stated fully herein and further alleges:

87. Defendant, SHERIFF, was on notice that the Pinellas County Jail Facility was overcrowded and failed to properly treat the special needs of certain inmates, such as inmates with medical conditions, as evidenced by numerous previous incidents, a portion of which are documented herein.

88. At all times material to this action, Defendant, SHERIFF, was on notice that the facility guards and medical staff were inadequately trained to handle the specialized medical conditions of all inmates, especially those requiring exceptional medical care, including Plaintiff, JONES.

89. Defendant, SHERIFF, has not made, continues not to make, and does not require daily inquiries by medical staff or persons with particularized medical training, into those inmates and/or detainees with specialized or emergency medical conditions.

90. Defendant, SHERIFF, is and has been on notice that medical staff does not make daily inquiries with each individual inmate or detainee and that there is no policy in place requiring staff to make such individual daily examinations. Accordingly, it is incumbent on a correctional officer, with no particularized training, to alert proper medical staff when a medical issue is brought to his or her attention.

91. Defendant, SHERIFF'S policy of "allowing" inmates to inquire about or request medical treatment, does not allow for ready access to medical care or immediate medical attention, and does not satisfy Defendant's legal duties or requirements, under the law.

92. The staff is not trained to understand the significance or the difference in the types of complaints that require immediate medical attention or that can follow the protocol of a specialized or emergency medical condition. Thereby leaving it in the untrained hands of a correctional officer to determine if immediate medical attention is warranted, at his or her unqualified discretion.

93. Defendant, SHERIFF, is legally required, under U.S.C. §1983 to provide heightened medical care to those with specialized medical conditions.

94. While Defendant, SHERIFF, may possess the necessary medical staff and equipment to address these specialized needs, they have no way to determine the appropriate time to administer to those specialized medical services and solely rely on individual complaints and a trust that those complaints are being correctly assessed and relayed by unqualified, nonmedical professionals.

95. Defendant, SHERIFF'S policies rely on faulty reporting methods, dependent on the sole discretion of untrained, nonmedical personnel.

96. Defendant, SHERIFF'S continued policy of denying medical attention based on arbitrary system of requesting medical treatment within a certain time limit to see

a doctor or other medical professional that is then available the next day or some other point in the future, does not adequately or reasonably give access to necessary medical care for individuals with specialized r emergency medical conditions, suffered by persons like plaintiff.

97. At all times material to this action, Defendant, SHERIFF, was on notice that the facility guards and medical staff continuously failed to treat inmates or detainees humanely.

98. Defendant, SHERIFF, knew or should have known of reports demonstrating the frequent failures of both the medical staff and corrections officers to appropriately address medical concerns of inmates and/or detainees with medical conditions.

99. Defendant, SHERIFF, had a duty to ensure that their employees, agents, and other responsible parties fulfilled their duties and did not violate the constitutional rights of persons such as Plaintiff, TERRY JONES.

100. Any abdication of policymaking and oversight responsibilities, by Defendant, SHERIFF, to other parties, contributed to the injuries of Plaintiff, JONES, by allowing such an environment to occur.

101. Defendant, SHERIFF, had a duty to train, supervise, control, monitor or otherwise ensure that the doctors, nurses, and jail security staff, under the Defendants' control, were able to adequately provide humane living conditions

and medical treatment, and did not violate the constitutional rights of persons such as the Plaintiff, TERRY JONES.

102. Defendant, SHERIFF, was on notice of the unconstitutional conditions in the Pinellas County jail facilities, and regularly failed to rectify these conditions.

103. The above acts and omissions of all Defendant, SHERIFF, constitutes a course of conduct and/or failure to act amounting to negligence and/or deliberate indifference to the rights, health, safety, and welfare of the plaintiff, TERRY JONES, and those similarly situated, resulting in the deprivation of his constitutional rights under state and federal law.

104. Federal and state law, as well as accepted corrections practices, at the time of the incident, provided "fair warning" to Defendant, SHERIFF, that their conduct was improper, incompetent, illegal, and in violation of the Plaintiff's constitutional and state rights.

105. The acts and omissions of the Defendant, SHERIFF, as set forth above, violated clearly established and well settled federal constitutional rights of the Plaintiff, TERRY JONES, i.e., cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Unites States Constitution.

106. At all times material hereto, Defendant, SHERIFF, was responsible for adopting, implementing, and maintaining the rules and regulations in regard to their obligation to provide constitutionally acceptable levels of housing, living

conditions, and health and assessment services for detainees and inmates within the Pinellas County jail system.

107. Defendant, SHERIFF, failed to comply with these obligations, as its employees breached their duties and failed to properly screen, assess, and treat Plaintiff or allow him humane living conditions, causing substantial risk and harm to Plaintiff, JONES, and those similarly situated.

108. Defendant, SHERIFF, through correctional officers, doctors, nurses, and medical staff, demonstrated deliberate indifference to the health and wellbeing of inmates such as Plaintiff JONES, by failing to institute a constitutionally adequate system for treating the medical problems of pre-trial detainees, which resulted in the systematic denial of medical care to inmates with serious, known medical problems.

109. Defendant, SHERIFF demonstrated deliberate indifference to the health and wellbeing of inmates such as the Plaintiff JONES, by failing to ensure that inmates received appropriate and necessary medical care, in a consistent manner.

110. As a result of the inadequate policy put in place, Plaintiff JONES suffered severely from an entirely preventable infection and loss of kidney function, as well as head, neck, back, and knee injuries, which have required extensive medical care and hospitalization.

111. Plaintiff JONES' inability to receive the proper medical care was a direct and proximate result of Defendant, SHERIFF'S failure to maintain the necessary, staffing, training, protocols, and so on, required of them by the Federal and State law, Department of Corrections regulations, community guidelines, and common practices and requirements in the field.

112. Defendant, SHERIFF, acted in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power possessed by virtue of state law and made possible only because Defendant, SHERIFF, was clothed with the authority of state law.

113. Plaintiff JONES was a victim of the above-mentioned illegal treatment of inmates and detainees, and said illegal treatment was the direct result of the previously described acts, omissions, policies, and/or customs of Defendant, SHERIFF.

114. The deliberate indifference of Defendant, SHERIFF, violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C §1983 provides a remedy.

115. As a direct and proximate result of Defendant, SHERIFF'S conduct, Plaintiff JONES suffered severe physical, mental, and emotional injuries, loss of earning capacity, and loss of enjoyment of life.

WHEREFORE Plaintiff TERRY JONES demands compensatory damages against Defendant, SHERIFF, plus attorney's fees, costs and trial by jury for all issues so triable by right.

## COUNT III

### 42b U.S.C. § 1983 CLAIM AGAINST DEFENDANT, THE STATE OF FLORIDA, for Violations of the Eighth and Fourteenth Amendments Failure to Provide Medical Care to Detainees with Known, Serious Medical Conditions

Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57), as if stated fully herein and further alleges:

116.   Defendant, STATE, has a duty to protect inmates and detainees, incarcerated within its borders, through oversight, management, and funding.

117.   Defendant, STATE, was on notice that the Pinellas County Jail Facility was overcrowded and failed to properly treat the special needs of certain inmates, such as inmates with medical conditions, as evidenced by numerous previous incidents, a portion of which are documented herein.

118.   Defendant, STATE, does not require daily inquiries by medical staff or persons with particularized medical training, into those inmates and/or detainees with specialized or emergency medical conditions.

119.   Defendant, STATE, is and has been on notice that medical staff does not make daily inquiries with each individual inmate or detainee and that there is no policy in place requiring staff to make such individual daily examinations. Accordingly,

it is incumbent on a correctional officer, with no particularized training, to alert proper medical staff when a medical issue is brought to his or her attention.

120.   Defendant, STATE'S allowance of a policy "allowing" inmates to inquire about or request medical treatment, does not allow for ready access to medical care or immediate medical attention, and does not satisfy Defendant's legal duties or requirements, under the law.

121.   The staff is not trained to understand the significance or the difference in the types of complaints that require immediate medical attention or that can follow the protocol of a specialized or emergency medical condition. Thereby leaving it in the untrained hands of a correctional officer to determine if immediate medical attention is warranted, at his or her unqualified discretion.

122.   Defendant, STATE, is legally required, under U.S.C. §1983 to provide heightened medical care to those with specialized medical conditions.

123.   While Defendant, STATE, may possess the necessary medical staff and equipment to address these specialized needs, they have no way to determine the appropriate time to administer to those specialized medical services and solely rely on individual complaints and a trust that those complaints are being correctly assessed and relayed by unqualified, nonmedical professionals.

124.   Defendant, STATE'S policies rely on faulty reporting methods, dependent on the sole discretion of untrained, nonmedical personnel.

125.   Defendant, STATE'S continued policy of denying medical attention based on arbitrary system of requesting medical treatment within a certain time limit to see a doctor or other medical professional that is then available the next day or some other point in the future, does not adequately or reasonably give access to necessary medical care for individuals with specialized r emergency medical conditions, suffered by persons like plaintiff.

126.   At all times material to this action, Defendant, STATE, was on notice that the facility guards and medical staff were inadequately trained to handle the specialized medical conditions of all inmates, especially those requiring exceptional medical care, including Plaintiff, JONES.

127.   At all times material to this action, Defendant, STATE, was on notice that the facility guards and medical staff continuously failed to treat inmates or detainees humanely.

128.   Defendant, STATE, knew or should have known of reports demonstrating the frequent failures of both the medical staff and corrections officers to appropriately address medical concerns of inmates and/or detainees with medical conditions.

129.   Defendant, STATE, had a duty to ensure that their employees, agents, and other responsible parties fulfilled their duties and did not violate the constitutional rights of persons such as Plaintiff, TERRY JONES.

130.   Any abdication of policymaking and oversight responsibilities, by Defendant, STATE, to other parties, contributed to the injuries of Plaintiff, JONES, by allowing such an environment to occur.

131.   Defendant, STATE, had a duty to train, supervise, control, monitor or otherwise ensure that their agents were able to adequately provide humane living conditions and medical treatment, and did not violate the constitutional rights of persons such as the Plaintiff, TERRY JONES.

132.   Defendant, STATE, was on notice of the unconstitutional conditions in the Pinellas County jail facilities, and regularly failed to rectify these conditions.

133.   The above acts and omissions of all Defendant, STATE, constitutes a course of conduct and/or failure to act amounting to negligence and/or deliberate indifference to the rights, health, safety, and welfare of the plaintiff, TERRY JONES, and those similarly situated, resulting in the deprivation of his constitutional rights under state and federal law.

134.   Federal and state law, as well as accepted corrections practices, at the time of the incident, provided "fair warning" to Defendant, STATE, that their conduct was improper, incompetent, illegal, and in violation of the Plaintiff's constitutional and state rights.

135.   The acts and omissions of the Defendant, STATE, as set forth above, violated clearly established and well settled federal constitutional rights of the Plaintiff,

TERRY JONES, i.e., cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Unites States Constitution.

136. At all times material hereto, Defendant, STATE, was responsible for adopting, implementing, and maintaining the rules and regulations regarding their obligation to provide constitutionally acceptable levels of housing, living conditions, and health and assessment services for detainees and inmates within the Pinellas County jail system.

137. Defendant, STATE, failed to comply with these obligations, as its agents breached their duties and failed to properly screen, assess, and treat Plaintiff or allow him humane living conditions, causing substantial risk and harm to Plaintiff, JONES, and those similarly situated.

138. Defendant, STATE, through Defendants, COUNTY and SHERIFF, demonstrated deliberate indifference to the health and wellbeing of inmates such as Plaintiff JONES, by failing to institute a constitutionally adequate system for treating the medical problems of pre-trial detainees, which resulted in the systematic denial of medical care to inmates with serious, known medical problems.

139. As a result of the inadequate policy put in place, Plaintiff JONES suffered severely from an entirely preventable infection and loss of kidney function, as

well as head, neck, back, and knee injuries, which have required extensive medical care and hospitalization.

140.   Plaintiff JONES' inability to receive the proper medical care was a direct and proximate result of Defendant, STATE'S failure to maintain the necessary, oversight, training, protocols, and so on, required of them by the Federal and State law, Department of Corrections regulations, community guidelines, and common practices and requirements in the field.

141.   Defendant, STATE, acted in reckless disregard of both constitutional prohibitions and guarantees under color of state law, thereby misusing the power possessed by virtue of law and made possible only because Defendant, STATE, clothed their agents with the authority of state law.

142.   Plaintiff JONES was a victim of the above-mentioned illegal treatment of inmates and detainees, and said illegal treatment was the direct result of the previously described acts, omissions, policies, and/or customs of Defendant, STATE.

143.   The deliberate indifference of Defendant, STATE, violated the constitutional rights of all persons, including the Plaintiff, for which 42 U.S.C §1983 provides a remedy.

144.   As a direct and proximate result of Defendant, STATE'S conduct, Plaintiff JONES suffered severe physical, mental, and emotional injuries, loss of earning capacity, and loss of enjoyment of life.

WHEREFORE Plaintiff TERRY JONES demands compensatory damages against Defendant, STATE, plus attorney's fees, costs and trial by jury for all issues so triable by right.

## COUNT IV

### *Liability for Negligence Against PINELLAS COUNTY*

Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven (57), as if stated fully herein and further alleges:

145.   At all times material hereto, Defendant, COUNTY, acted by and through its agents, employees, and/or officers.

146.   At all times material hereto, individuals employed in the Pinellas County Jail facilities acted within the course and scope of their employment with Defendant, COUNTY.

147.   At all times material hereto, Defendant, COUNTY, by and through its agents, deputies, and/or employees breached the duty to protect by permitting Plaintiff, JONES, to be subject to substandard or nonexistent medical care, resulting in serious injury to Plaintiff.

148.   At all times material hereto, Defendant, COUNTY, by and through its agents,

deputies, and/or employees breached the duty to protect by not immediately

treating Plaintiff, JONES' medical condition and allowing Plaintiff to suffer

significant pain, loss of kidney function, and further injury.

149.   As a direct and proximate result of the negligence of the agents, employees,

and/or officers of Defendant, PINELLAS COUNTY, Plaintiff JONES sustained

injuries, for which Defendant is liable, as a matter of law.

WHEREFORE the Plaintiff JONES demands compensatory damages against

the Defendant PINELLAS COUNTY, costs, and trial by jury on issues so triable by

right.

## COUNT V

### *Liability for Negligence Against PINELLAS COUNTY SHERIFF*

Plaintiff realleges and incorporates paragraphs one (1) through fifty-seven

(57), as if stated fully herein and further alleges:

150.   At all times material hereto, Defendant, SHERIFF, acted by and through its

agents, employees, and/or officers.

151.   At all times material hereto, individuals employed in the Pinellas County Jail

facilities acted within the course and scope of their employment with Defendant,

SHERIFF.

152. At all times material hereto, Defendant, SHERIFF, by and through its agents, deputies, and/or employees breached the duty to protect by permitting Plaintiff, JONES, to be subject to substandard or nonexistent medical care, resulting in serious injury to Plaintiff.

153. At all times material hereto, Defendant, SHERIFF, by and through its agents, deputies, and/or employees breached the duty to protect by not immediately treating Plaintiff, JONES' medical condition and allowing Plaintiff to suffer significant pain, loss of kidney function, and further injury.

154. As a direct and proximate result of the negligence of the agents, employees, and/or officers of Defendant, PINELLAS COUNTY SHERIFF, Plaintiff JONES sustained injuries, for which Defendants are vicariously liable as a matter of law.

WHEREFORE the Plaintiff JONES demands compensatory damages against the Defendant PINELLAS COUNTY SHERIFF, costs, and trial by jury on issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TERRY JONES, demands judgment against each Defendant individually and/or jointly for compensatory damages together with interest, costs of suit, and such other relief as the court deems proper and as follows:

A. Damages in an amount to be determined at trial;

B. Prejudgment and postjudgment interest at the maximum rate allowable by law;

C. Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

D. The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorney's fees; and

E. Such other and further relief available under all applicable state or federal law and any relief the Court deems just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished by the Court's CM/ECF system on this 25th day of March 2019, to John A. Powell Jr., Esquire, Attorney for Defendant Pinellas County, jpowell@pinellascounty.org and eservice@pinellascounty.org and Paul G. Rozelle, Esquire, Attorney for Sheriff, prozelle@pcsonet.com and amarcott1@pcsonet.com.

/s/ Craig R. Lynd
Craig R. Lynd, Esquire
Florida Bar No.: 122210
Email: craiglynd@kaufmanlynd.com
Secondary Email: rrosso@kaufmanlynd.com
KAUFMAN & LYND, PLLC
Attorney for Plaintiff
200 E. Robinson Street, Suite 250
Orlando, Florida 32801
Phone: (407) 706-3535
Fax: (407) 440-4543