UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY JONES,

    Plaintiff,

v.                                                CASE NO. 8:17-cv-2888-T-23AEP

THE STATE OF FLORIDA, *et. al.*,

    Defendants.
_____/

## ORDER

Jones, through counsel, sues under 28 U.S.C. § 1983 for injuries allegedly caused by a lack of medical care during his sixteen-day detention in the Pinellas County jail. This action proceeds under Jones's second amended complaint. (Doc. 30) Pending is Pinellas County Sheriff Robert Gualtieri's motion (Doc. 35) under Rule 12(b), Federal Rules of Civil Procedure, to dismiss Jones's second amended complaint; Jones's opposition (Doc. 36); and Sheriff Gualtieri's reply (Doc. 40)

### I.  PROCEDURAL BACKGROUND

Because Jones filed his action in the wrong division of the Middle District of Florida, the action was transferred (Doc. 4) from the Orlando Division to the Tampa Division. The initial complaint alleged (1) claims under Section 1983 and the Fifth, Eighth, and Fourteenth Amendments against the State of Florida, Pinellas County, the Pinellas County Sheriff's Office, Officer John Doe, and Doctor John Doe

(Count I) and (2) a claim of negligence under state law against both Pinellas County and the Pinellas County Sheriff's Office (Count II). Following an order (Doc. 6) to show cause why service was not effected, Jones issued a summons for each of the three governmental entities and served the two county entities, both of whom moved to dismiss. (Docs. 14 and 17) Instead of opposing the motions to dismiss, Jones filed an amended complaint. (Doc. 18)

In the first amended complaint Jones (1) omitted the two Doe defendants; (2) re-structured his pleading by re-asserting claims against the three governmental entities so that the claims under Section 1983 and the Fifth, Eighth, and Fourteenth Amendments were asserted separately against Pinellas County (Count I), the Pinellas County Sheriff's Office (Count II), and the State of Florida (Count III); and (3) re-asserted the negligence claim against Pinellas County (Count IV) and the Pinellas County Sheriff's Office (Count V). The two county defendants again moved to dismiss. (Docs. 20 and 21) Instead of opposing the motions to dismiss, Jones moved (Doc. 23) for leave to file a second amended complaint.

An earlier order allows the second amended complaint because the proposed amended pleading "correct[s] some of the deficiencies noted in the motions to dismiss, such as substituting Sheriff Gualtieri as a defendant for the Pinellas County Sheriff's Office, removing a claim under the Fifth Amendment, and averring pre-suit compliance with Florida's sovereign immunity statute for tort actions."[1] (Doc. 29

---

[1] As determined later in this order, Jones's alleged compliance with the notice requirement under Chapter 768, Fla. Stat., is inconsequential because Chapter 766 controls his state action.

at 1–2)  Otherwise, the second amended complaint is structured the same as the first amended complaint.

Defendant Pinellas County moved to dismiss, Jones stipulated to the dismissal, and an endorsed order dismisses Pinellas County.  (Docs. 32–34)  Jones has never shown that he served the State of Florida, which has never appeared, and Jones has never explained his failure to serve the State of Florida.  Consequently, Jones's claims against Pinellas County (Counts I and IV) and the State of Florida (Count III) are dismissed from this action, and, as a result, no originally named defendant remains in this action.

Pending is Sheriff Gualtieri's ("Gualtieri") motion to dismiss, Jones's opposition, and Gualtieri's reply.  (Docs. 35, 36, and 40)  In opposing the motion to dismiss Jones "confesses error" by conceding that he can pursue neither a claim against Gualtieri under the Eighth Amendment nor for punitive damages from Gualtieri.  (Doc. 36 at 3 and 6)  As a consequence, this action proceeds on (1) Jones's claims under Section 1983 and the Fourteenth Amendment (Count II) and (2) for negligence (Count V) against only Gualtieri.

## II.  FACTUAL BACKGROUND

According to the second amended complaint, Jones's sixteen-day stay in the Pinellas County jail began on April 6, 2016, and ended with his release on April 21, 2016.  (Doc. 30 at ¶ 39)  Jones was a diabetic and he previously had both a gastric bypass surgery and a stroke.  (¶ 40)  This action is based on Jones having developed a urinary dysfunction while detained in the county jail.

The day after his detention began Jones reported to personnel a list of his prescribed medications and complained about abdominal discomfort, and the following day (April 8) he was administered his medication. (¶¶ 40 and 41) A day later and after alerting staff to his inability to urinate in the past twenty-four hours, a nurse noted that Jones's lower abdomen was distended and painful. In accord with a doctor's telephonic directive the nurse inserted a Foley catheter, which relieved Jones's bladder and he felt better. (¶ 42) The following day (April 10) Jones complained to medical staff about increased pelvic pain, discolored urine, and increased pressure caused by the catheter. A urine culture was ordered and Jones was instructed on how to clean and empty the catheter. (¶ 43) Under a doctor's orders the catheter was removed two days later (April 12). (¶ 44)

Three days later (April 15) Jones complained about a burning sensation while urinating (¶ 45), and another three days later (April 18) Jones reported to a detention guard that he could not release his bladder. The guard allegedly advised Jones that he would have to wait until the morning to see medical personnel, called Jones both a "cry baby" and a "boy," and told Jones to "quit whining." (¶ 46) Later that day Jones (1) complained to a nurse (who was dispensing medication to another detainee) about his inability to urinate in over twelve hours and the nurse told Jones to drink more fluids, despite allegedly noticing Jones's distended lower abdomen, and (2) allegedly collapsed due to pain (injuring his head, neck, back, and knee) and no guard responded to his cellmates' call for help. (¶¶ 47 and 48) Jones represents that on some undisclosed date his fall was noted in his medical records by a duty

nurse. (¶ 49)  The next day (April 19) Jones reported to medical staff both that he was able to urinate only a small amount and that the urine was dark.  Later that afternoon medical staff both re-inserted a catheter and allowed Jones to use a wheelchair because of his difficulty walking caused by the catheter and back pain from the earlier fall.  (¶ 50)

The following morning (April 20) the wheelchair was removed and Jones was given a cane, x-rays were ordered, and pain medication was injected into his lower back.  (¶¶ 51 and 52)  Also, a doctor opined both in Jones's medical file that Jones was "feigning illness" and to Jones that he just wanted to get out of the "general population" at the jail.  (¶ 53)  Jones was released from the county jail the next day (April 21).  Jones immediately reported to an emergency room to have the catheter removed, and tests showed that Jones had both an infection from the catheter and a near seventy-five percent loss of kidney function.  (¶ 55)

### III.  MOTION TO DISMISS

Gualtieri moves (Doc. 35) under Rule 12(b)(6) to dismiss the second amended complaint.  A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and must provide "more than labels and conclusions [or] a formulaic recitation of the elements of the cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), summarizes the pleading requirements as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008), explains that "*Twombly* [i]s a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." As a consequence, *Twombly* governs a Section 1983 prisoner complaint. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

Under Rule 12(b)(6) the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The allegations of fact and any reasonable inference must combine to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), explains that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "Plausibility," as *Iqbal*, 556 U.S. at 678–79, teaches, is greater than a mere "possibility" but less than a "probability."

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown" — "that the pleader is entitled to relief."

However, a plaintiff must show "'proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).

## IV.  ANALYSIS

First, Count V asserts a state-law negligence claim against Gualtieri, who argues that Count V is controlled by Chapter 766, Fla. Stat., because the claim is based on either medical negligence or medical malpractice. Jones contends that Gualtieri "mischaracterizes" the claim. Count V alleges that Gualtieri was negligent (1) by permitting Jones "to be subjected to substandard or nonexistent medical care" and (2) by "not immediately treating Jones' medical condition . . . ." (Doc. 30 at 34) Gualtieri's argument that Chapter 766 controls Count V is correct because, "in order to determine whether the pre-suit requirements of chapter 766 apply, we look to whether the plaintiff must rely upon the medical negligence standard of care as set forth in section 766.102(1)." *Integrated Health Care Servs., Inc. v. Lang-Redway*, 840 So. 2d 974, 980 (Fla. 2002). Because Jones fails to show (or even to assert) that he has complied with Chapter 766's pre-suit requirements, Section 766.206(2)

requires dismissal. *Gross v. White*, 340 F. App'x 527, 532 (11th Cir. 2009)[2] (affirming dismissal for not "me[eting] the procedural requirements necessary to pursue a medical negligence claim under Florida law."). *See also Alba v. Montford*, 517 F.3d 1249, 1255 (11th Cir. 2008) (applying a similar Georgia law and stating that the plaintiff "stands in the same shoes as anyone else in Georgia filing a professional malpractice claim and is subject to no stricter rules than the rest of Georgia's residents"). Jones's Count V, a state law claim, is **DISMISSED**.

Second, Count II alleges that Gualtieri violated Jones's rights by "fail[ing] to provide medical care to detainees with known, serious medical conditions." (Doc. 30 at 19) Some of the numbered paragraphs include terms that generally challenge the conditions of confinement, such as "overcrowding" and "[in]humane living conditions." Gualtieri argues for dismissal of these conclusory, factually unsupported claims. Jones's opposition to the motion to dismiss fails to address these general conditions-of-confinement assertions. To the extent the complaint asserts a claim not based on medical care, such a claim is factually unsupported and, consequently, **DISMISSED**. *See Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*) (a *pro se* complaint is entitled to a generous interpretation, not a complaint filed by counsel).

The remainder of Count II seeks to hold Gualtieri — not his subordinates and not the medical personnel — liable for the alleged denial of medical care. To

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

avoid the prohibition against imposing liability under *respondeat superior*, *Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 691 (1978) ("[W]e conclude that . . . a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."), Count II asserts Gualtieri's liability based on (1) his custom or policy of delaying medical care and (2) his failing to train employees to recognize a serious medical need. To prevail under either theory of liability Jones must show that he had a serious medical need. *Cf. Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense. That would be the precise analogue of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary."). As discussed below, Jones fails to meet his burden because his factual basis fails to show that he was denied medical care for a serious medical need.

A state has the constitutional obligation to provide adequate medical care — not mistake-free medical care — to those in confinement. *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995), *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989). "Accidents, mistakes, negligence, and medical malpractice are not 'constitutional violations merely because the victim is a prisoner.'" *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment [actionable] under [Section 1983]." *Estelle v. Gamble*, 429 U.S. at 106. *Accord Bingham v. Thomas*, 654 F.3d 1171,

1176 (11th Cir. 2011) (applying *Gamble*). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ." 429 U.S. at 107. *Accord Wallace v. Hammontree*, 615 F. App'x 666, 667 (11th Cir. 2015) ("Claims concerning the doctor's medical judgment, such as whether the doctor should have used another form of medical treatment or a different diagnostic test, are inappropriate claims under the Eighth Amendment.").

Instead, an inmate is protected from a custodian official's or a medical official's deliberate indifference to a serious medical need. In analyzing a claim of deliberate indifference to a serious medical need, a court must focus on two components: "whether evidence of a serious medical need exists; if so, whether the defendants' response to that need amounted to deliberate indifference." *Adams v. Poag*, 61 F.3d at 1543. These two components are explained further in *Gilmore v. Hodges*, 738 F.3d 266, 274 (2013):

> A plaintiff must first show an objectively serious medical need that, if unattended, posed a substantial risk of serious harm, and that the official's response to that need was objectively insufficient. *See Bingham v. Thomas*, 654 F.3d 1171, 1175–76 (11th Cir. 2011). Second, the plaintiff must establish that the official acted with deliberate indifference, *i.e.*, the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence.

*See also Clas v. Torres*, 549 F. App'x 922 (11th Cir. 2013) ("For a prisoner to state an . . . inadequate medical treatment claim under § 1983, the allegations must show (1) an objectively serious medical need; (2) deliberate indifference to that need by the defendant; and (3) causation between the indifference and the plaintiff's injury."); *Wallace*, 615 F. App'x at 667 (11th Cir. 2015) ("Medical treatment violates the Eighth

Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'") (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

Moreover, "a serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either instance, the medical need must be "one that, if left unattended, poses a substantial risk of serious harm." *Farrow*, 320 F.3d at 1243. *See Farmer v. Brennan*, 511 U.S. 825, 834, (1994).

Jones received some form of medical care on seven of the sixteen days he was detained, beginning with his receiving medication the day after he reported his prescribed medication and ending with both his receiving an injection for pain and the medical staff's ordering of x-rays the day before his release. Jones's allegation of Gualtieri's denial or delay of medical care for a serious medical need is based on a single instance on April 18 when he complained to a guard about his inability to urinate and "[t]he guard told him he had to wait to see any medical personnel until the next morning."[3] (Second Amended Complaint, Doc. 30 at ¶ 46) Jones had received treatment for his urinary dysfunction on three of the nine days

---

[3] The guard's alleged use of the term "had to wait" is the basis for Jones's custom or policy claim. The unidentified guard's alleged statement to Jones that he "had to wait to see any medical personnel" suggests neither a policy nor a custom implemented by Gualtieri but suggests only an isolated, independent, and ambiguous statement by one employee.

before he complained to the guard.  Moreover, after complaining to the guard, later that day Jones spoke with a nurse (who was distributing medication to another detainee) and she — a trained health care provider — advised Jones to drink more fluid; the nurse apparently did not see Jones's condition as a "serious medical need."

Jones fails to allege Gualtieri's "deliberate indifference" to an "objectively serious medical need that, if unattended, posed a substantial risk of serious harm."  At most, the complaint suggests that one or more of Gualtieri's employees misdiagnosed or underestimated Jones's condition, which is an inadequate allegation to sustain this claim against Gualtieri.  Jones states no claim against Gualtieri under Section 1983 based on either (1) a custom or policy of denying or delaying medical care for a serious medical need or (2) a failure to train employees to recognize a serious medical need.

The motion to dismiss (Doc. 35) is **GRANTED**.  The State of Florida is **DISMISSED** for Jones's failure to effect service.  The clerk must enter a judgment for the defendants and close this case.

ORDERED in Tampa, Florida, on September 21, 2020.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE